189 So. 914

### RICHMOND v. STATE.

#### 6 Div. 346.

Court of Appeals of Alabama.
June 13, 1939.

Boutwell & Pointer, of Birmingham, for appellant.

Thos. S. Lawson, Atty. Gen., and Prime F. Osborn, Asst. Atty. Gen., for the State.

SAMFORD, Judge.

The defendant was charged by affidavit in the Jefferson County Court of Misdemeanors, and on appeal to the Circuit Court of Jefferson County, by a complaint filed by the Solicitor, under the Statute, with a violation of Section 4247 of the Code of 1923. The specific charge embodied in the complaint was that the defendant was concerned in setting up or carrying on a lottery or device of like kind, or gift enterprise, etc.

The bill of exceptions does not purport to set out all of the evidence, and for that reason the Attorney General, in his brief, insists that this Court on appeal cannot consider the rulings of the trial court upon the admission of testimony. Mr. Justice Brown, while a Judge on this Court, in the case of Dickey v. State, 15 Ala. App. 135-138, 72 So. 608, 609, stated the rule as follows: * * * " If the evidence objected to is not inherently incompetent, but such as may be competent and relevant in connection with other evidence, the presumption will be indulged in favor of the ruling of the trial court that other evidence was offered rendering the testimony admissible. * * * Otherwise stated, the burden is on the appellant to affirmatively show error. * * * If, however the evidence objected to is inherently incompetent—not capable of being rendered competent and admissible in connection with other evidence—no such presumption

prevails." Dickey v. State, 15 Ala.App. 135, 72 So. 608; Davis v. State, 168 Ala. 53, 52 So. 939; Harper v. State, 109 Ala. 28, 19 So. 857.

The evidence objected to by the appellant in this case is not inherently incompetent. All of the testimony offered tended to prove the existence of a lottery, or devise of like kind, and the connection of the defendant (appellant here) in its operation. Under the rule, as stated in the Dickey case, supra, the presumption would here arise that there was other evidence justifying the ruling of the trial court upon the admission of the testimony objected to, or that its admission would be error without injury and, therefore, not reversible under Supreme Court Rule 45, but for the fact that the Supreme Court, Liberty Nat. Life Ins. Co. v. Collier, infra, again speaking through Brown, Judge, quoted with approval from Bolton v. Cuthbert et al., 132 Ala. 403, 31 So. 358, 90 Am.St.Rep. 914, as follows: * * * " 'While this court has gone very far in indulging this presumption to sustain the judgment below, where charges are involved, it has never extended it to a case where evidence was improperly admitted or excluded.' " It appears therefore that the cases of Dickey v. State, supra, Davis v. State, supra, Harper v. State, supra, should be overruled, Liberty Nat. Life Ins. Co. v. Collier, 228 Ala. 3, 154 So. 118, 119.

This Court held in Hallmark v. State, 185 So. 908, 910,[1] that: "The conclusion and designation of a transaction, or a series of transactions, as a lottery, by the testimony of a lay witness, cannot be sustained by the courts; and, as to what a 'Policy Racket' is, is not judicially known."

On the trial of the instant case, in the Circuit Court, T. A. Riley was qualified as an expert in matters pertaining to what is known as "Policy Racket" as conducted in and around Birmingham. This witness testified that he had been investigating and examining gambling in and around Birmingham, as a police officer, for the past twenty-five years; that he was specially detailed on the gambling squad for ten or fifteen years; that he was at this time Chief of Police; that in the course of investigations he had occasion to become familiar with what is known as the "Policy Racket" around town; that he acquired his information about the way it is carried on by active contact with the different phases of gambling, and hearing defendants testify in Court, by talking to defendants and having it explained to him by different ones; and that he had observed it himself from different raids and places where it exists. After qualifying as to his knowledge concerning the so-called "Policy Racket", the witness proceeded, over numerous objections and exceptions, to describe in detail some paraphernalia which he and two other officers found at the defendant's house and in his room at the time the arrest was made in this case. This witness then explained the use of each article; how the books were distributed to different writers, and how the game was played through the agency of the so-called "Writers", who sold the tickets or numbers. Witness then proceeded to describe in detail the books taken from defendant's room, as illustrated by one Book 137 or Class 646, and how the purchaser of the tickets or numbers could select any number from 1 to 78; how the writer writes out the play, turns it in, and how the drawing is had, and the pay-off to the winner. In fact, the testimony of this witness discloses a carefully laid out plan for the conducting of a lottery in violation of the Statute. The facts and surrounding circumstances all having been testified to, the Court was in possession of such facts as to enable it to say whether or not the game played was a lottery. This evidence was all pertinent and relative to the issues involved in this case, and objections made by the defendant, during the trial, were free from error; or, if there was technical error, the substantial rights of the defendant were not interfered with.

There are a large number of objections and exceptions to testimony touching the foregoing evidence relating to "Policy Racket", or lottery, with which the defendant is sought to be connected. As illustrative of the rulings of the Court, appellant's counsel has pointed out in his brief the following: "That paraphernalia (referring to certain articles taken from the room of defendant) distinguishes this lottery from every other kind. This one is known as the Big Six. The paraphernalia indicates that it is used with the Big Six, which is called lottery or policy. The other is called the numbers racket, where the numbers come out in

---

[1] Ante, p. 416.

the newspaper. They call it the Bug. The one I am referring to has to do with the policy racket." A question propounded to the witness Riley by the Solicitor: "Mr. Riley, I will ask you to explain to the jury how the so-called policy racket is carried on here and around the City of Birmingham," and to the further question propounded by the Solicitor to witness Riley: "The paraphernalia that you seized there at that time and place—will you explain to us just what that paraphernalia is prepared for, what it is used for?" The foregoing quotations furnish a fair illustration of objections and exceptions running through the entire testimony of the witness Riley. It will be seen that the testimony called for and given was not the conclusion of the witness, but the testimony of collective facts by a witness who had qualified as to his knowledge of the game with which this defendant is being charged. Even if it might be said that, in some instances, this witness had testified to conclusions, such conclusions followed detailed statement of the facts incident to the game, and were not inherently incompetent. Where such is the case, if there were error, it would not injuriously effect the defendant's rights.

The testimony offered by the State descriptive of the "Policy Racket" was not incompetent. On the contrary, such testimony was pertinent to the issues involved as tending to prove the character of gambling with which this defendant is charged.

It follows from the foregoing that there is no error of a reversible nature which can be considered by us.

We have read and considered this whole record, as is required of us by the Statute, and in it we find that such errors as exist do not affect the substantial rights of the defendant. Supreme Court Rule 45.

The judgment is affirmed.

Affirmed.

